# EXHIBIT A

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF RICHLAND | ) | FOR THE FIFTH JUDICIAL CIRCUIT |
| | ) | |
| JAMES DUNBAR, | ) | C/A NO.:_____ |
| | ) | |
| Plaintiff, | ) | Personal Talcum Powder Use; |
| | ) | Aviation Ordnanceman in United States |
| v. | ) | Navy; Retail |
| | ) | |
| ABB MOTORS AND MECHANICAL | ) | (Blythewood, South Carolina; Camden, |
| INC. (sued individually and successor-in- | ) | South Carolina; Beaufort, South |
| interest to BALDOR ELECTRIC | ) | Carolina; Orlando, Florida; Millington, |
| COMPANY (sued individually and as | ) | Tennessee; Jacksonville, Florida; |
| successor-in-interest to RELIANCE | ) | Guantanamo Bay, Cuba; Brunswick, |
| ELECTRIC & ENGINEERING CO.) | ) | Maine; USS Lexington (CV-16); USS |
| A Missouri Corporation | ) | independence (CV-22); Bermuda; USS |
| | ) | Forestal (CVA-59)) |
| AIR & LIQUID SYSTEMS | ) | |
| CORPORATION (sued as successor-by- | ) | |
| merger to BUFFALO PUMPS, INC.) | ) | ORIGINAL SUMMONS |
| A Pennsylvania Corporation | ) | (Personal Injury) |
| | ) | |
| ALFA LAVAL, INC. (sued individually and | ) | |
| as successor-in-interest to THE DELAVAL | ) | Plaintiff Demands a Jury Trial |
| SEPARATOR COMPANY) | ) | |
| A New Jersey Corporation | ) | |
| | ) | |
| ARMSTRONG INTERNATIONAL, INC. | ) | |
| A Michigan Corporation | ) | |
| | ) | |
| AURORA PUMP COMPANY | ) | |
| A Minnesota Corporation | ) | |
| | ) | |
| BLACKMER PUMP COMPANY | ) | |
| A Michigan Corporation | ) | |
| | ) | |
| BORGWARNER INC. f/k/a BORG- | ) | |
| WARNER CORPORATION (sued | ) | |
| individually and as successor-in-interest to | ) | |
| YORK ICE MACHINERY CORP.) | ) | |
| A Delaware Corporation | ) | |
| | ) | |
| CAMERON INTERNATIONAL | ) | |
| CORPORATION f/k/a COOPER | ) | |
| CAMERON CORPORATION (sued | ) | |

*CSC*

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

individually and as successor-in-interest to )
THE COOPER-BESSEMER )
CORPORATION) )
A Delaware Corporation )
)
**CARRIER CORPORATION** )
A Delaware Corporation )
)
**CARRIER GLOBAL CORPORATION** )
A Delaware Corporation )
)
**CLEAVER-BROOKS, INC.** f/k/a AQUA- )
~~CHEM, INC. d/b/a~~ CLEAVER-BROOKS )
DIVISION (sued individually and as )
successor-in-interest to DAVIS )
ENGINEERING COMPANY) )
A Delaware Corporation )
)
**COPES-VULCAN, INC.** )
A Delaware Corporation )
)
**CRANE CO.** (sued individually and as )
successor-in-interest to COCHRANE )
CORPORATION, CHAPMAN VALVE )
COMPANY, and JENKINS VALVES, INC.) )
A Delaware Corporation )
)
**CRANE ENVIRONMENTAL, INC.** (sued )
individually and as successor-in-interest to )
COCHRANE CORPORATION) )
A Delaware Corporation )
)
**CYPRUS AMAX MINERALS** )
**COMPANY** (sued as successor to SIERRA )
TALC COMPANY and UNITED TALC )
COMPANY) )
A Delaware Corporation )
**ELLIOTT COMPANY** f/k/a and d/b/a )
ELLIOTT TURBOMACHINERY )
COMPANY )
A Delaware Corporation )
)
**EMERSON ELECTRIC COMPANY** for )
its Kunkle brand of products )
A Missouri Corporation )
)

2

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

**FLOWSERVE US, INC.** (sued as successor )
to EDWARD VALVE, INC.) )
A Delaware Corporation )
  )
**FMC CORPORATION** (sued individually )
and as successor-in-interest to NORTHERN )
PUMP COMPANY f/k/a NORTHERN FIRE )
APPARATUS COMPANY) )
A Delaware Corporation )
  )
**FOSTER WHEELER ENERGY** )
**CORPORATION** )
A Delaware Corporation )
  )
**GARDNER DENVER, INC.** )
A Delaware Corporation )
  )
**GENERAL ELECTRIC COMPANY** )
(sued individually and as successor-in- )
interest to THE CONSOLIDATED VALVE )
COMPANY) )
A New York Corporation )
  )
**GOULDS PUMPS, INCORPORATED** )
A Delaware Corporation )
  )
**HENRY TECHNOLOGIES, INC.** (sued )
individually and as successor-in-interest to )
HENRY VALVE CO.) )
An Illinois Corporation )
  )
**HOPEMAN BROTHERS INC.** )
A Virginia Corporation )
  )
**HOWDEN NORTH AMERICA INC.** f/k/a )
HOWDEN BUFFALO INC. (sued )
individually and as successor-in-interest to )
BUFFALO FORGE FAN COMPANY) )
A Delaware Corporation )
**HUNTINGTON INGALLS** )
**INDUSTRIES, INC.** d/b/a INGALLS )
SHIPBUILDING f/k/a NORTHROP )
GRUMMAN SHIP SYSTEMS f/k/a )
INGALLS SHIPBUILING, a division of )
LITTON SYSTEMS, INC. )
A Delaware Corporation )

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

**IMO INDUSTRIES, INC.** (sued
individually and as successor-in-interest to
DELAVAL TURBINE, INC. and C. H.
WHEELER MANUFACTURING
COMPANY)
A Delaware Corporation

**ITT GOULDS PUMPS, INC.**
A Delaware Corporation

**ITT INC.** f/k/a ITT CORPORATION f/k/a
ITT INDUSTRIES, INC. (sued individually
and as successor-in-interest to FOSTER
ENGINEERING COMPANY)
An Indiana Corporation

**JENKINS BROS.** sued individually and as
successor to and d/b/a JENKINS VALVE
CORP.
A Massachusetts Corporation

**JERGUSON GAGE & VALVE
COMPANY** d/b/a CLARK RELIANCE
CORPORATION
A Delaware Corporation

**McNALLY INDUSTRIES, LLC** (sued
individually and as successor-in-interest to
NORTHERN FIRE APPARATUS
COMPANY);
A Wisconsin Limited Liability Company

**METROPOLITAN LIFE INSURANCE
COMPANY**
A New York Corporation

**THE NASH ENGINEERING COMPANY**
A Connecticut Corporation

**OLSON TECHNOLOGIES INC.** (sued
individually and as successor-in-interest to
HOMESTEAD VALVE COMPANY)
A Pennsylvania Corporation

**PFIZER INC.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

A Delaware Corporation )
)
**THE PRUDENTIAL INSURANCE** )
**COMPANY OF AMERICA** (sued )
individually and as successor-in-interest to )
YORK ICE MACHINERY CORP.) )
A New Jersey Corporation )
)
**ROBERTSHAW CONTROLS** )
**COMPANY** d/b/a FULTON SYLPHON
VALVES
A Delaware Corporation

**ROCKWELL AUTOMATION, INC.** )
(sued individually and as successor-in- )
interest to RELIANCE ELECTRIC & )
ENGINEERING CO.) )
A Delaware Corporation )
)
**THE RUGGLES-KLINGEMANN MFG.** )
**CO.** )
An Illinois Corporation )
)
**SOFT SHEEN \* CARSON (W.I.), INC.** )
A Delaware Corporation )
)
**SPIRAX SARCO, INC.** )
A Delaware Corporation )
)
**SPX CORPORATION** (sued individually )
and as successor-in-interest to KINNEY )
VACUUM PUMP COMPANY) )
A Delaware Corporation )
)
**SUPERIOR-LIDGERWOOD-MUNDY** )
CORPORATION (sued individually and as )
successor-in-interest to M.T. DAVIDSON )
COMPANY) )
A Wisconsin Corporation )
)
**TACO, INC.** )
A Rhode Island Corporation )
)
**UNION CARBIDE CORPORATION** )
A New York Corporation )
)

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

| | |
|---|---|
| **VELAN VALVE CORP.** a/k/a VELAN VALVE CORPORATION<br>A Delaware Corporation | ) <br> ) <br> ) <br> ) |
| **VIACOMCBS INC.** f/k/a CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. successor-by-merger to CBS CORPORATION (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION and as successor-in-interest to BF STURTEVANT)<br>A Delaware Corporation | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| **VIAD CORP** f/k/a VIAD CORPORATION f/k/a THE DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-RUSSELL COMPANY)<br>A Delaware Corporation | ) <br> ) <br> ) <br> ) <br> ) |
| **WARREN PUMPS, LLC** (sued individually and as successor-in-interest to QUIMBY PUMP COMPANY)<br>A Delaware Limited Liability Company | ) <br> ) <br> ) <br> ) |
| **WEIR VALVES & CONTROLS USA, INC.** f/k/a ATWOOD & MORRILL<br>A Massachusetts Corporation | ) <br> ) <br> ) <br> ) |
| **THE WILLIAM POWELL COMPANY**<br>An Ohio Corporation | ) <br> ) <br> ) |
| Defendants. | ) |

## SUMMONS FOR RELIEF

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, of which a copy is herewith served upon you, and to serve a copy of your answer to said Complaint on the subscribed, John D. Kassel, Kassel McVey, 1330 Laurel Street, Columbia, South Carolina 29202, within THIRTY (30) days after the service hereof, exclusive of the date of such service. If you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

s/Theile B. McVey
John D. Kassel (SC Bar 3286)
jkassel@kassellaw.com
Theile B. McVey (16682)
tmcvey@kasselalw.com
Jamie Rutkoski (103270)
jrutkoski@kassellaw.com
KASSEL McVEY ATTORNEYS AT LAW
1330 Laurel Street
P.O. Box 1476
Columbia, SC 29202
803-256-4242
803-256-1952 (Facsimile)
Other email: emoultire@kassellaw.com

Pending Approval of Pro Hac Vice Application
Frank Wathen
Texas State Bar No. 20920010
1201 Elm Street, Suite 3400
Dallas, Texas 75270

Attorneys for Plaintiff

October 16, 2020

Columbia, South Carolina.

7

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF RICHLAND | ) | FOR THE FIFTH JUDICIAL CIRCUIT |
| | ) | |
| JAMES DUNBAR, | ) | C/A NO.:_____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Personal Talcum Powder Use; |
| | ) | Aviation Ordnanceman in United States Navy; |
| ABB MOTORS AND MECHANICAL | ) | Retail |
| INC. (sued individually and successor-in- | ) | |
| interest to BALDOR ELECTRIC | ) | (Blythewood, South Carolina; Camden, South |
| COMPANY (sued individually and as | ) | Carolina; Beaufort, South Carolina; Orlando, |
| successor-in-interest to RELIANCE | ) | Florida; Millington, Tennessee; Jacksonville, |
| ELECTRIC & ENGINEERING CO.) | ) | Florida; Guantanamo Bay, Cuba; Brunswick, |
| A Missouri Corporation | ) | Maine; USS Lexington (CV-16); USS |
| | ) | independence (CV-22); Bermuda; USS |
| AIR & LIQUID SYSTEMS | ) | Forestal (CVA-59)) |
| CORPORATION (sued as successor-by- | ) | |
| merger to BUFFALO PUMPS, INC.) | ) | Mesothelioma |
| A Pennsylvania Corporation | ) | |
| | ) | |
| ALFA LAVAL, INC. (sued individually | ) | |
| and as successor-in-interest to THE | ) | **ORIGINAL COMPLAINT** |
| DELAVAL SEPARATOR COMPANY) | ) | (Personal Injury) |
| A New Jersey Corporation | ) | |
| | ) | |
| ARMSTRONG INTERNATIONAL, | ) | Plaintiff Demands a Jury Trial |
| INC. | ) | |
| A Michigan Corporation | ) | |
| | ) | |
| AURORA PUMP COMPANY | ) | |
| A Minnesota Corporation | ) | |
| | ) | |
| BLACKMER PUMP COMPANY | ) | |
| A Michigan Corporation | ) | |
| | ) | |
| BORGWARNER INC. f/k/a BORG- | ) | |
| WARNER CORPORATION (sued | ) | |
| individually and as successor-in-interest to | ) | |
| YORK ICE MACHINERY CORP.) | ) | |
| A Delaware Corporation | ) | |
| | ) | |
| | ) | |

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

**CAMERON INTERNATIONAL
CORPORATION** f/k/a COOPER
CAMERON CORPORATION (sued
individually and as successor-in-interest to
THE COOPER-BESSEMER
CORPORATION)
A Delaware Corporation
**CARRIER CORPORATION**
A Delaware Corporation

**CARRIER GLOBAL CORPORATION**
A Delaware Corporation

**CLEAVER-BROOKS, INC.** f/k/a AQUA-
CHEM, INC. d/b/a CLEAVER-BROOKS
DIVISION (sued individually and as
successor-in-interest to DAVIS
ENGINEERING COMPANY)
A Delaware Corporation

**COPES-VULCAN, INC.**
A Delaware Corporation

**CRANE CO.** (sued individually and as
successor-in-interest to COCHRANE
CORPORATION, CHAPMAN VALVE
COMPANY, and JENKINS VALVES,
INC.)
A Delaware Corporation

**CRANE ENVIRONMENTAL, INC.**
(sued individually and as successor-in-
interest to COCHRANE CORPORATION)
A Delaware Corporation

**CYPRUS AMAX MINERALS
COMPANY** (sued as successor to SIERRA
TALC COMPANY and UNITED TALC
COMPANY)
A Delaware Corporation

**ELLIOTT COMPANY** f/k/a and d/b/a
ELLIOTT TURBOMACHINERY
COMPANY
A Delaware Corporation

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

**EMERSON ELECTRIC COMPANY** for                    )
its Kunkle brand of products                         )
A Missouri Corporation                               )
                                                     )
**FLOWSERVE US, INC.** (sued as                      )
successor to EDWARD VALVE, INC.)                     )
A Delaware Corporation                               )
                                                     )
**FMC CORPORATION** (sued individually               )
and as successor-in-interest to NORTHERN             )
PUMP COMPANY f/k/a NORTHERN                           )
FIRE APPARATUS COMPANY)                               )
A Delaware Corporation                               )
**FOSTER WHEELER ENERGY**                            )
**CORPORATION**                                      )
A Delaware Corporation                               )
                                                     )
**GARDNER DENVER, INC.**                             )
A Delaware Corporation                               )
                                                     )
**GENERAL ELECTRIC COMPANY**                         )
(sued individually and as successor-in-              )
interest to THE CONSOLIDATED VALVE                    )
COMPANY)                                             )
A New York Corporation                               )
                                                     )
**GOULDS PUMPS, INCORPORATED**                       )
A Delaware Corporation                               )
                                                     )
**HENRY TECHNOLOGIES, INC.** (sued                   )
individually and as successor-in-interest to         )
HENRY VALVE CO.)                                     )
An Illinois Corporation                              )
                                                     )
**HOPEMAN BROTHERS INC.**                            )
A Virginia Corporation                               )
                                                     )
**HOWDEN NORTH AMERICA INC.**                        )
f/k/a HOWDEN BUFFALO INC. (sued                      )
individually and as successor-in-interest to         )
BUFFALO FORGE FAN COMPANY)                           )
A Delaware Corporation                               )
                                                     )
**HUNTINGTON INGALLS**                               )
**INDUSTRIES, INC.** d/b/a INGALLS                   )
SHIPBUILDING f/k/a NORTHROP                           )

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

GRUMMAN SHIP SYSTEMS f/k/a )
INGALLS SHIPBUILING, a division of )
LITTON SYSTEMS, INC. )
A Delaware Corporation )
)
**IMO INDUSTRIES, INC.** (sued )
individually and as successor-in-interest to )
DELAVAL TURBINE, INC. and C. H. )
WHEELER MANUFACTURING )
COMPANY) )
A Delaware Corporation )
)
**ITT GOULDS PUMPS, INC.** )
A Delaware Corporation )
)
**ITT INC.** f/k/a ITT CORPORATION f/k/a )
ITT INDUSTRIES, INC. (sued individually )
and as successor-in-interest to FOSTER )
ENGINEERING COMPANY) )
An Indiana Corporation )
)
**JENKINS BROS.** sued individually and as )
successor to and d/b/a JENKINS VALVE )
CORP.; )
A Massachusetts Corporation )
)
**JERGUSON GAGE & VALVE** )
**COMPANY** d/b/a CLARK RELIANCE )
CORPORATION )
A Delaware Corporation )
)
**McNALLY INDUSTRIES, LLC** (sued )
individually and as successor-in-interest to )
NORTHERN FIRE APPARATUS )
COMPANY); )
METROPOLITAN LIFE INSURANCE )
COMPANY )
A Wisconsin Limited Liability Company )
)
**METROPOLITAN LIFE INSURANCE** )
**COMPANY** )
A New York Corporation )
)
**THE NASH ENGINEERING** )
**COMPANY** )
A Connecticut Corporation )

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

**OLSON TECHNOLOGIES INC.** (sued
individually and as successor-in-interest to
HOMESTEAD VALVE COMPANY)
A Pennsylvania Corporation

**PFIZER INC.**
A Delaware Corporation

**THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA** (sued
individually and as successor-in-interest to
YORK ICE MACHINERY CORP.)
A New Jersey Corporation

**ROBERTSHAW CONTROLS
COMPANY** d/b/a FULTON SYLPHON
VALVES
A Delaware Corporation

**ROCKWELL AUTOMATION, INC.**
(sued individually and as successor-in-
interest to RELIANCE ELECTRIC &
ENGINEERING CO.)
A Delaware Corporation

**THE RUGGLES-KLINGEMANN MFG.
CO.**
An Illinois Corporation

**SOFT SHEEN * CARSON (W.I.), INC.**
A Delaware Corporation

**SPIRAX SARCO, INC.**
A Delaware Corporation

**SPX CORPORATION** (sued individually
and as successor-in-interest to KINNEY
VACUUM PUMP COMPANY)
A Delaware Corporation

**SUPERIOR-LIDGERWOOD-MUNDY
CORPORATION** (sued individually and
as successor-in-interest to M.T.
DAVIDSON COMPANY)
A Wisconsin Corporation

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

**TACO, INC.**                                          )
A Rhode Island Corporation                              )
                                                        )
**UNION CARBIDE CORPORATION**                           )
A New York Corporation                                  )
                                                        )
**VELAN VALVE CORP.** a/k/a VELAN                       )
VALVE CORPORATION                                       )
A Delaware Corporation                                  )
                                                        )
**VIACOMCBS INC.** f/k/a CBS                            )
CORPORATION (a Delaware Corporation)                    )
f/k/a VIACOM, INC. successor-by-merger                  )
to CBS CORPORATION (a Pennsylvania                      )
Corporation) f/k/a WESTINGHOUSE                         )
ELECTRIC CORPORATION and as                             )
successor-in-interest to BF                             )
STURTEVANT)                                             )
A Delaware Corporation                                  )
                                                        )
**VIAD CORP** f/k/a VIAD                                )
CORPORATION f/k/a THE DIAL                              )
CORPORATION (sued individually and as                   )
successor-in-interest to GRISCOM-                       )
RUSSELL COMPANY)                                        )
A Delaware Corporation                                  )
                                                        )
**WARREN PUMPS, LLC** (sued                             )
individually and as successor-in-interest to           )
QUIMBY PUMP COMPANY)                                    )
A Delaware Limited Liability Company                    )
                                                        )
**WEIR VALVES & CONTROLS USA,**                         )
**INC.** f/k/a ATWOOD & MORRILL                         )
A Massachusetts Corporation                             )
                                                        )
**THE WILLIAM POWELL COMPANY**                          )
An Ohio Corporation                                     )
                                                        )
_____Defendants          )

Now comes Plaintiff, JAMES DUNBAR, a citizen and resident of the State of South Carolina, and sues the Defendants and alleges as follows:

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

## JURISDICTION

1.      That as is evidenced by the caption of the instant Complaint which is specifically incorporated herein, some of the Defendants are foreign corporations who are amenable to jurisdiction in the Courts of South Carolina by virtue of their respective contacts with the State of South Carolina and/or their respective conduct of substantial and/or systematic business in South Carolina which subjects them to the jurisdiction of the South Carolina Courts pursuant to the South Carolina Long-Arm Statute. Defendant Howden North America Inc. f/k/a Howden Buffalo Inc. (sued individually and as successor-in-interest to Buffalo Forge Fan Company) maintains its principal place of business in Camden, County of Kershaw, South Carolina, and Defendant Spirax Sarco, Inc. maintains its principal place of business in Blythewood, Richland County, South Carolina. Accordingly, Defendants Howden North America Inc. f/k/a Howden Buffalo Inc. (sued individually and as successor-in-interest to Buffalo Forge Fan Company) and Spirax Sarco, Inc. are citizens of the State of South Carolina pursuant to 28 U.S. Code § 1332. Each Defendant herein mined, milled, designed, manufactured, marketed, supplied, processed, purchased, imported, converted, constructed, distributed, compounded and/or retailed substantial amounts of raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products which are or were sold, distributed and/or used in South Carolina. Plaintiff JAMES DUNBAR was exposed to various raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products while living in the State of South Carolina and serving in the United States Navy. That certain raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products were manufactured, supplied, sold or installed at sites located within the State of South Carolina. That mesothelioma is a progressive, insidious disease and, on information and belief, such contributed in part to Plaintiff JAMES DUNBAR's contraction of his mesothelioma caused by breathing dust from Defendants' raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products.

## FOR A FIRST CAUSE OF ACTION

2.      Defendants, and each of them, are or at times relevant hereto were miners, millers, designers, manufacturers, marketers, suppliers, processors, purchasers, importers, converters, constructors, distributors, compounders and/or retailers of raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products (hereinafter collectively referred to as "Defendants' Products") including, but not limited to, asbestos-containing talcum

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

powder products, asbestos-containing insulation products, asbestos-containing equipment, and asbestos-containing building products.

3.     The Defendants, acting through their agents, servants, and/or employees cause and have caused in the past Defendants' Products to be placed in the stream of interstate commerce with the result that Defendants' Products came into use by Plaintiff JAMES DUNBAR and others in close proximity to Plaintiff.

4.     Plaintiff JAMES DUNBAR was exposed to asbestos through his regular and frequent personal use of Johnson's Baby Powder from 1972 to 2012, intermittently, and his regular and frequent personal use of Magic Shaving Powder from approximately the 1970's to the 1980's, intermittently, while residing in Beaufort, South Carolina, and Savannah, Georgia, and while serving in the United States Navy at the following locations: Orlando, Florida; Millington, Tennessee; Jacksonville, Florida; Guantanamo Bay, Cuba; Brunswick, Maine; the USS Lexington (CV-16); the USS Independence (CV-22); Bermuda; and the USS Forestal (CVA-59). Plaintiff JAMES DUNBAR's regular and frequent use of Johnson's Baby Powder and Magic Shaving Powder generated asbestos-containing dust and exposed Plaintiff JAMES DUNBAR to respirable asbestos fibers.

5.     Additionally, Plaintiff JAMES DUNBAR was exposed to asbestos during his service in the United States Navy as an Aviation Ordnanceman at the following locations: Naval Training Center, Orlando, Florida, in approximately 1972; Navy Base in Millington, Tennessee, in approximately 1972; Naval Air Station Cecil Field in Jacksonville, Florida, from approximately 1972 to 1974; Naval Air Base in Guantanamo Bay, Cuba, from approximately 1974 to 1975; Naval Air Station in Brunswick, Maine, from approximately 1975 to 1978) and serving on the USS Lexington (CV-16) and USS Independence (CV-22); Bermuda from approximately 1978 to 1980; Mayport Naval Base in Jacksonville, Florida, from approximately 1980 to 1981, and serving on the USS Forestal (CVA-59). His duties included, but were not limited to, working around mechanics and other tradesmen performing repairs and maintenance on ships while in close proximity for Plaintiff. During this time period, Plaintiff was exposed to raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products including, but not limited to: Reliance Motors; Buffalo Pumps, Aurora Pumps, Blackmer Pumps, Cochrane Pumps, Goulds Pumps, DeLaval Pumps, Northern Pumps, Gardner Denver Pumps, Nash Pumps, Kinney Pumps, M. T. Davidson Pumps, Taco Pumps, Warren Pumps, and Quimby Pumps; DeLaval Purifiers; Armstrong Steam Traps, and Velan Steam Traps; York Ice Machinery Valves, Carrier Valves, Vulcan Valves, Crane Valves, Cochrane Valves, Chapman Valves, Jenkins Valves, Elliott Valves, Kunkle Valves, Edward Valves, Foster Valves, Jerguson Valves, Consolidated Valves, Henry Valves, Newport News Valves, Homestead Valves, Fulton Sylphon Valves, Ruggles Klingemann Valves, Spirax Sarco Valves, Westinghouse Valves, Atwood & Morrill Valves, and Powell Valves; Cooper Bessemer Engines; Davis Heat Exchangers; Cleaver Brooks Boilers; Cochrane Feed Tanks; Elliott Deaerating Feed Systems; Foster Wheeler Distilling Plants and Griscom Russell Distilling Plants; General Electric Ships Service Generators; Buffalo Forge Fans; Newport News Condensers and C. H. Wheeler Condensers; DeLaval Turbines, Westinghouse Turbines, and B. F. Sturtevant Turbines; C. H. Wheeler Air Ejectors; Spirax Sarco Strainers; Taco Heaters and Griscom Russell Fuel Oil Heaters; Westinghouse Blowers, Westinghouse Forced Draft Blowers,

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

and B. F. Sturtevant Forced Draft Blowers; asbestos-containing Marinite Board and Micarta Board supplied by Hopeman Brothers Inc.; and asbestos fibers supplied by Union Carbide Corporation.

6.    Additionally, Plaintiff JAMES DUNBAR was exposed to asbestos in approximately 1984 while working as a laborer for Beaufort Building Center in Beaufort, South Carolina. Plaintiff's job duties included, but were not limited to, handling building products. During this time period, Plaintiff was exposed to asbestos-containing products including, but not limited to, U.S. Gypsum Joint Compound. He was also exposed to asbestos fibers supplied by Union Carbide Corporation, and asbestos-containing talc supplied by Cyprus Amax Minerals Company (sued as successor to Sierra Talc Company and United Talc Company) and Pfizer, Inc.

7.    During the course and scope of Plaintiff's personal use of talcum powder products, during his service in the United States Navy, and while working construction retail, Plaintiff JAMES DUNBAR was exposed to Defendants' Products, which exposures directly and proximately caused him to develop an illness known and designated as mesothelioma caused by breathing dust from Defendants' Products.

8.    The injuries, illnesses and disabilities of Plaintiff JAMES DUNBAR are the direct and proximate result of the negligence, recklessness and willfulness of the Defendants, jointly and severally, in that they produced, sold and otherwise put into the stream of interstate commerce Defendants' Products which the Defendants, and each of them, knew were deleterious, poisonous and highly harmful to Plaintiff JAMES DUNBAR's body, lungs, respiratory system and health.

9.    The injuries, illnesses and disabilities of Plaintiff JAMES DUNBAR are the direct and proximate result of the negligence, recklessness, and willfulness of the Defendants, jointly and severally, in that, even though the Defendants knew, or in the exercise of ordinary care should have known, that Defendants' Products were deleterious, poisonous and highly harmful to Plaintiff JAMES DUNBAR's body, lungs, respiratory system and health, the Defendants nonetheless:

(a)    Failed to advise Plaintiff JAMES DUNBAR of the dangerous characteristics of Defendants' Products;

(b)    Failed or omitted to provide Plaintiff JAMES DUNBAR with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if, in truth, there were in any way able to protect Plaintiff from being poisoned and disabled as he was by exposure to such deleterious and harmful Defendants' Products;

(c)    Failed and omitted to place any warnings or sufficient warnings on their containers of Defendants' Products or on Defendants' Products themselves to warn handlers and bystanders thereof of the dangers to health in coming in contact with Defendants' Products;

(d)     Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of handling, using and installing Defendants' Products;

(e)     Inadequately warned, if in fact they warned at all, persons such as Plaintiff JAMES DUNBAR and others of the dangers to their health in coming in contact with and breathing asbestos from Defendants' Products, even after they knew of the dangers and cancer-causing effects and up until the present time;

(f)     Did not recommend methods to improve the environment where said personal talcum powder use, use in the military, and in commercial retail occurred;

(g)     Did not develop alternative products;

(h)     Continued to use a known cancer-causing product, to wit:  asbestos;

(i)     Failed and omitted to issue any warnings or sufficient warnings subsequent to the time the Defendants caused Defendants' Products to be sold and placed in personal residences, on military ships, in retail, or places of use.

10.     At all times relevant, it was feasible for Defendants to have warned Plaintiff JAMES DUNBAR, tested Defendants' Products and designed safer and/or substituted asbestos-free Defendants' Products.

11.     As a result of the negligence, recklessness and willfulness, Plaintiff has been damaged severely as is set forth below.

## FOR A SECOND CAUSE OF ACTION

12.     Plaintiff repeats and realleges the First Cause of Action where relevant.

13.     The Defendants, and each of them, impliedly warranted that Defendants' Products were of good and merchantable quality and fit for their intended use.

14.     The implied warranty made by the Defendants, and each of them, that Defendants' Products were of good and merchantable quality and fit for their particular intended use was breached and that certain harmful, poisonous and deleterious matter was given off into the atmosphere through Plaintiff JAMES DUNBAR's use of Defendants' Products, and the use and of Defendants' Products by workers in close proximity to Plaintiff.

15.     As a direct and proximate result of the breach of the implied warranty of good and merchantable quality and fitness for the particular intended use, Plaintiff JAMES DUNBAR developed an illness, to-wit:  mesothelioma caused by breathing dust from Defendants' Products.

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

## FOR A THIRD CAUSE OF ACTION

16.     Plaintiff repeats and realleges the First and Second Causes of Action where relevant.

17.     At all material times, Defendants were engaged in the mining, milling, design, manufacture, marketing, supply, sale, processing, purchase, import, converting, compounding, and/or retail of Defendants' Products.

18.     Defendants, acting through their agents, servants, and/or employees, placed in the stream of commerce Defendants' Products which were mined, milled, designed, manufactured, marketed, supplied, sold, processed, purchased, imported, converted, compounded, and/or retailed that were defective because they failed to contain adequate warnings, defectively designed because they were more dangerous than would be contemplated by an ordinary user, the risks of the products outweighed their benefits, defectively manufactured as Defendants' Products failed to comply with their own specifications, unsafe and unreasonably dangerous for their intended and/or foreseeable uses with the result that Defendants' Products came into use by Plaintiff JAMES DUNBAR and workers in close proximity to Plaintiff, and fibers from Defendants' Products were frequently inhaled and ingested by Plaintiff JAMES DUNBAR as a result of his personal use for personal hygiene, use by workers in close proximity to Plaintiff during his service in the military, and Plaintiff's use while working in construction retail.

19.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell Defendants' Products that were not unreasonably dangerous or defective and/or a duty to warn Plaintiff JAMES DUNBAR and other foreseeable workers, users, and bystanders of Defendants' Products of the dangers and defects which the Defendants created knew, or within the exercise of reasonable care, should have known.

20.     Defendants acted unreasonably in designing, manufacturing, and formulating Defendants' Products to be harmful to Plaintiff JAMES DUNBAR's body, lungs, respiratory system, skin and health. Defendants acted unreasonably in the following acts and/or omissions:

(a)     Failing to adopt a practical, feasible, and otherwise reasonable alternative design that was safer, that could have been reasonably adopted and that would have prevented or substantially reduced the risk of harm to individuals such as Plaintiff JAMES DUNBAR without substantially impairing the usefulness, practicality or desirability of Defendants' Products; and

(b)     Using a design that was so unreasonable that a reasonable person, aware of the relevant facts, would not use Defendants' Products of this design; and

(c)     Allowing the use of asbestos, and/or talc that contains asbestos, and/or asbestos-containing products to be used in the manufacture and/or

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

maintenance of Defendants' Products when said products and/or equipment were supposed to be asbestos-free.

21.    Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing Defendants' Products into the stream of commerce knew, or in the exercise of reasonable care should have known, about the risks associated with said products. Defendants' Products in question were defective at the time they left the control of the Defendants.

22.    Defendant's unreasonable acts in designing and manufacturing Defendants' Products which were distributed, sold and specified by Defendants were a proximate cause of Plaintiff JAMES DUNBAR's development of mesothelioma, as a consequence of which through no fault of his own, he was severely injured, disabled and damaged.

23.    As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## FOR A FOURTH CAUSE OF ACTION

24.    Plaintiff repeats and realleges the First, Second and Third Causes of Action where relevant.

25.    Plaintiff further alleges that at the time the Defendants, and each of them, sold and/or delivered Defendants' Products, and at the time Defendants' Products were used by Plaintiff JAMES DUNBAR and/or by other tradesmen working in close proximity to Plaintiff in the manner and environment intended, Defendants' Products were in a defective condition and were unreasonably dangerous and unfit for their intended use in that they were deleterious, poisonous and highly harmful to Plaintiff JAMES DUNBAR's body.

26.    The above was the proximate cause of the severe damages sustained by Plaintiff as hereinafter set forth.

## FOR A FIFTH CAUSE OF ACTION

27.    Plaintiff repeats and realleges the First, Second, Third and Fourth Causes of Action where relevant.

28.    That at various times from the late 1800's to the filing of this lawsuit, Defendants had actual knowledge of the dangers to Plaintiff JAMES DUNBAR of asbestos exposure, nevertheless, Defendants deliberately, intentionally and purposefully withheld such information from Plaintiff JAMES DUNBAR and other users, thus denying Plaintiff JAMES DUNBAR the knowledge with which to take necessary safety precautions, and avoid further dust exposure, the specifics of Defendants' intentional acts including, but not limited to, the following:

    (a)    Never issued recall-type letters or notices to prior users;

    (b)    Frustrated the publication of articles on the asbestos health hazards in the literature;

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

(c)    Top management officials of Defendants rejected advice of other corporate officials to warn of the hazards of Defendants' Products; such rejection by top management officials being motivated by the possibility of adverse effects on profits;

(d)    Intentional inadequacy and delay of use of warnings on Defendants' Products;

(e)    Failed to advise Plaintiff JAMES DUNBAR and other potential users of medical findings known to Defendants concerning the dangers of asbestos exposure;

(f)    Suppressed the dissemination of information to Plaintiff JAMES DUNBAR and his barbers concerning the hazards of asbestos exposure.

29.    Defendants' conduct in knowingly and intentionally failing to warn about hazards of asbestos exposure constituted willful, wanton, and reckless conduct in disregard of the rights of Plaintiff JAMES DUNBAR.

30.    The foregoing deliberate, intentional and purposeful acts of the Defendants were the direct and proximate cause of Plaintiff JAMES DUNBAR's injuries and damages hereinafter described, and Plaintiff is, therefore, entitled to compensation and punitive damages.

## FOR A SIXTH CAUSE OF ACTION
## FRAUD AGAINST DEFENDANT SOFT SHEEN * CARSON (W.I.), INC.

31.    Plaintiff repeats the allegations of the First, Second, Third, Fourth and Fifth Causes of Action where relevant.

32.    **Fraudulent Misrepresentation;** Defendant is liable for its fraudulent misrepresentations:

(a)    First, Defendant, via its employees, agents, advertisements, or any other authorized person or document, represented that certain facts were true when they were not. The specific identities of these employees, agents, advertisements, or any other authorized person or document are maintained in Defendant's records. Such records remain in the exclusive control of Defendant pursuant to Defendant's respective document-retention policies. While Plaintiff does not currently know all of the specific advertisements, or the names of all of the employees, agents, or any other authorized person who made the representations, Plaintiff will have access to this information once discovery has commenced and will be able to specifically name the advertisements as well as the employees, agents, or any other authorized persons.

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

(b)    Second, Defendant represented that Defendant's Product it manufactured, supplied, or specified for use were not hazardous to humans. These material representations were made before and during the years that Plaintiff JAMES DUNBAR purchased and Plaintiff was exposed to asbestos from Defendants' Product. Such material representations were made either directly to Plaintiff, or to a third party intending and reasonably expecting that the substance of those representations would be repeated to Plaintiff.

(c)    Third, Defendant knew that the representations were material representations.

(d)    Fourth, Defendant knew that the material representations were false when Defendant made them, or Defendant made the material representations recklessly and without regard for their truth or falsity.

(e)    Fifth, Defendant intended that Plaintiff JAMES DUNBAR, and/or the same class of persons as Plaintiff, rely on the material representations or their substance and their truth, and act upon same.

(f)    Sixth, Plaintiff JAMES DUNBAR was ignorant of the falsity of the material representations made by the Defendant.

(g)    Seventh, Plaintiff JAMES DUNBAR had a right to and reasonably relied on and acted upon Defendant's material representations or the substance of these material representations.

(h)    Eighth, Plaintiff JAMES DUNBAR developed mesothelioma.

(i)    Ninth, Plaintiff JAMES DUNBAR's reliance on those material representations were a substantial factor in causing Plaintiff's mesothelioma, a consequent and proximate injury.

33.    **Fraudulent Concealment (Nondisclosure)**: Defendant is liable for its fraudulent concealment (nondisclosure).

(a)    First, Defendant made affirmative statements that were so misleading (e.g. misleading "half-truths") that they gave rise to a fraud cause of action even in the absence of a specific relationship or transaction as between Defendant and Plaintiff JAMES DUNBAR. Specifically, Defendant stated that Defendant's Product could be used safely while concealing that it was in fact lethal because it contained and released asbestos fibers.

(b)    Second, Defendant (i) had exclusive knowledge of material facts not known to Plaintiff JAMES DUNBAR as set forth above (ii) actively concealed those material facts from Plaintiff (iii) made partial representations but also suppressed material facts, as set forth above, and (iv) made factual

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

representations, but did not disclose facts which materially qualified those representations. Such nondisclosures included Defendant representing Defendant's Products as safe when used as intended and as fit for the particular purpose for which it as marketed, while not disclosing the facts that Defendant's Product contained asbestos that would become airborne during the intended and foreseeable use of the product, rendering it dangerous and unfit for their intended purpose.

(c)    Third, Defendant entered into a relationship and/or a transaction with Plaintiff JAMES DUNBAR sufficient to give rise to a duty to disclose. For example, Plaintiff used or otherwise encountered Defendant's Product that was purchased either directly from Defendant, Defendant's authorized dealers or suppliers, or any other entity upon which Defendant derived a direct monetary benefit directly from Plaintiff's purchase and use of Defendant's Product. As for another example, Defendant directly advertised Defendant's

Product to those in South Carolina, Georgia and elsewhere as a symbol of freshness, cleanliness, and purity. Defendant advertised and marketed Defendant's Product as being only the beacon of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness," helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild." The Defendant compelled consumers through advertisements to dust themselves with the product for shaving. Defendant derived direct monetary benefit from consumers' use of the product because Plaintiff decided to use or purchase Defendant's product.

(d)    Fourth, Plaintiff JAMES DUNBAR did not know of the concealed facts.

(e)    Fifth, Defendants intended to deceive Plaintiff JAMES DUNBAR by concealing the facts, and/or by making certain representations without disclosing additional facts that would have materially qualified those representations.

(f)    Sixth, had the omitted information been disclosed, Plaintiff JAMES DUNBAR reasonably would have behaved differently.

(g)    Seventh, Plaintiff JAMES DUNBAR developed mesothelioma.

(h)    Eighth, Defendant's fraudulent concealment (nondisclosure) was a substantial factor in causing Plaintiff JAMES DUNBAR's mesothelioma.

34.    **Conspiracy to Commit Fraudulent Misrepresentation**: Plaintiff hereby incorporates by reference the allegations of Paragraph 32 as if fully stated herein. Defendant is liable for its conspiracy to commit fraudulent misrepresentation.

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

(a)    First, Defendant was aware that its conspirators planned to commit fraudulent misrepresentation against Plaintiff JAMES DUNBAR and/or the same class of persons as Plaintiff.

(b)    Second, Defendant agreed with its conspirators and intended that the fraudulent misrepresentation be committed.

(c)    Third, Plaintiff JAMES DUNBAR developed mesothelioma.

(d)    Fourth, Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff JAMES DUNBAR's mesothelioma, a consequent and proximate injury.

35.    **Conspiracy to Commit Fraudulent Concealment (Nondisclosure)**: Plaintiff hereby incorporates by reference the allegations of Paragraph 33 as if fully stated herein. Defendant is liable for its conspiracy to commit fraudulent concealment.

(a)    First, Defendant was aware that its conspirators planned to commit fraudulent concealment against Plaintiff JAMES DUNBAR and/or the same class of persons as Plaintiff.

(b)    Second, Defendant agreed with its conspirators and intended that the fraudulent concealment be committed.

(c)    Third, Plaintiff JAMES DUNBAR developed mesothelioma.

(d)    Fourth, Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff JAMES DUNBAR's mesothelioma.

36.    **Knowledge of Hazards**: At all times pertinent hereto, Defendant owed Plaintiff a duty, as provided for in Florentine Corp. v. Peda 1, Inc. 287 S.C. 382, 339 S.E. 2d 112 (SC Supreme Court, 1985) to abstain from injuring Plaintiff JAMES DUNBAR's person, property, or rights. In violation of that duty, Defendant did the acts and omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing injury to Plaintiff. Such acts and omissions consisted of acts falling within Florentine Corp. v. Peda 1, Inc. 287 S.C. 382, 339 S.E. 2d 112 (SC Supreme Court, 1985) and more specifically were (i) suggestions of fact which were not true and which the Defendant did not believe to be true, (ii) assertions of fact which were not true, which the Defendant had no reasonable ground for believing them to be true, and (iii) the suppression of facts when a duty existed to disclose them, all as are more fully set forth herein, and the violation of which as to any one such item gave rise to a cause of action for violation of Plaintiff' rights as provided for in the aforementioned Florentine Corp. v. Peda 1, Inc. 287 S.C. 382, 339 S.E. 2d 112 (SC Supreme Court, 1985).

37.    Since 1924, Defendant knew and possessed the true facts (consisting of medical and scientific data and other knowledge) which clearly indicated that Defendant's Products

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

referred to herein were and are hazardous to the health and safety of Plaintiff JAMES DUNBAR and others similarly situated. Defendant engaged in the following acts and omissions:

(a)    Did not label Defendant's Products as to the hazards of such products to the health and safety of Plaintiff JAMES DUNBAR and others in his position using and being exposed to these products when the knowledge of such hazards was existing and known to Defendant since 1924. By not labeling Defendant's Product as to its said hazards, Defendant caused to be suggested as a fact to Plaintiff, and others in his position that it was safe for them to use Defendant's Product, when in fact these things were not true and Defendant did not believe this to be true.

(b)    Suppressed information relating to the danger of using Defendant's Product by requesting the suppression of information to Plaintiff JAMES DUNBAR, Plaintiff's class of persons, and the general public concerning the dangerous nature of Defendant's Product to all persons, including users, bystanders and household members, by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof when Defendant was bound to disclose such information.

(c)    Sold Defendant's Product to the public, including Plaintiff JAMES DUNBAR and others in South Carolina, Georgia and other states without advising them of the dangers of use of Defendant's Product and to those persons' household members, when Defendant knew of such dangers as set forth herein and above, and had a duty to disclose such dangers. Thus, Defendant caused to be positively asserted to Plaintiff and the public that which was not true and which Defendant had no reasonable ground for believing it to be true, in a manner not warranted by the information possessed by Defendant, of that which was and is not true, to wit, that it was safe for Plaintiff to use Defendants' Product and it did not pose a risk of harm.

(d)    Suppressed and continue to suppress from everyone, including Plaintiff JAMES DUNBAR, medical, scientific data, and knowledge of the accurate results of studies including, but not limited to, Waldemar C. Dreesen of the United States Public Health Service's 1933 report to the National Safety Council the results of a study conducted among tremolite, talc and slate workers. The study indicated that the talc was a hydrous calcium magnesium silicate, being 45% talc and 45% tremolite, and the National Safety Council stated "The results of the study seemed to indicate a relationship between the amount of dust inhaled and the effect of this dust on the lungs of the workers." As early as 1934, the National Safety Council was publishing information stating that "a cause of severe pulmonary injury is asbestos, a silicéte of magnesium." late September 1935 issue of National Safety News, an article entitled *No Halfway Measures in Dust Control* by

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

Arthur S. Johnson, which reported lowered lung capacity resulting from "asbestosis" and "similar conditions" that developed "from exposure to excess of many mineral dusts relatively low in free silica content." The article further noted that claims for disabilities from workers who alleged exposure to "clay, talc, emery, and carborundum dusts" had "claims prosecuted successfully." The article concluded that "[i]n the absence of adequate diagnoses, occupational histories and a more satisfactory method of adjudicating claims than prosecution at common law, we must conclude that it is necessary to find a practical method for controlling all mineral dusts."

(e)    Belonged to, participated in, and financially supported the Industrial Hygiene Foundation, Asbestos Information Association, the Asbestos Textile Institute (ATI), and other industry organizations including the Cosmetic, Toiletry, and Fragrance Association (now known as the Personal Care Products Council), which actively promoted the suppression of information of the danger to users of and bystanders to the Defendant's Product for and on behalf of Defendant, thereby misleading Plaintiff JAMES DUNBAR to his prejudice through the suggestions and deceptions set forth above in this cause of action. ATI's Dust Control Committee, which changed its name to the Air Hygiene Committee of ATI, was specifically enjoined to study the subject of dust control; discussions in such committee were held many times of (i) the dangers inherent in asbestos and the dangers which arise from the lack of control of dust and (ii) the suppression of such information from 1946 to a date unknown to Plaintiff at this time.

(f)    Knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis in 1930 with the study of mine and mill workers at the Thetford asbestos mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina. This information was disseminated through the ATI and other industry organizations to Defendant. Between 1942 and 1950, Defendant knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the ATI and other industry organizations to Defendant. Thereby, Defendant suggested as fact that which is not true and disseminated other facts likely to and which did mislead Plaintiff JAMES DUNBAR for want of communication of true facts, which consisted of the previously described medical and scientific data and other knowledge by not giving Plaintiff the true facts concerning such knowledge of danger, when Defendant was bound to disclose it.

(g)    Failed to warn Plaintiff JAMES DUNBAR and others similarly situated regarding the nature of Defendants' Product. In 1968, a study presented at the American Industrial Hygiene Conference and published in the American Industrial Hygiene Association Journal concluded that "[all] of the 22

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

talcum products analyzed have a...fiber content. . . averaging 19%. The fibrous-material was predominantly talc but contained minor amounts of tremolite, anthophyllite, and chrysotile as these are often present in fibrous talc mineral deposits. Unknown significant amounts of such materials in products that may be used without precautions may create an unsuspected problem." [Cralley, L.J., et al.; *Fibrous and Mineral Content of Cosmetic Talcum Products*, 29 Ant Ind. Hyg. Assoc. J. 350 (1968).] Defendant failed to warn Plaintiff and others similarly situated that Defendant's Products is, among other things, dangerous when breathed and causes pathological effects without noticeable trauma, although Defendant possessed knowledge that Defendant's Product was dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose it.

(h)    Concealed from Plaintiff JAMES DUNBAR and others similarly situated the true nature of their exposure, the fact that Defendant knew that exposure to respirable asbestos meant that Plaintiff would inhale this asbestos, significantly increasing his risk of developing asbestosis, lung cancer, and mesothelioma; that Plaintiff had in fact been exposed to respirable asbestos; that Defendants' Product to which Plaintiff was exposed would cause pathological effects in the human body without noticeable or perceptible trauma to warn him of injury; and Defendant engaged in these acts and omissions while under a duty to and bound to disclose this information.

(i)    Failed to provide information to the public at large and buyers, users and physicians of Plaintiff JAMES DUNBAR for the purpose of conducting physical examinations of anyone who came in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose and treat individuals coming into contact with asbestos, in that the Defendant's Product to which Plaintiff had been exposed would cause pathological effects without noticeable trauma, even though Defendant was under a duty to supply such information and such failure was and is likely to mislead persons including Plaintiff as to the dangers and risk of harm to which Plaintiff and others were exposed.

(j)    Affirmatively misrepresented that Defendant's Product was safe to use and handle, when Defendant knew such statements were false when made, or made said false statements recklessly and without regard for whether the statements were true.

38.    Each of the foregoing acts, suggestions, assertions, and forbearances to act when a duty existed to act, Defendant, having such knowledge, knowing Plaintiff JAMES DUNBAR did not have such knowledge and would breathe Defendant's product innocently, was done falsely and fraudulently and with full intent to induce Plaintiff to be in a dangerous environment and to cause him to remain unaware of the true facts, all in violation of Florentine Corp. v. Peda 1, Inc. 287 S.C. 382, 339 S.E. 2d 112 (SC Supreme Court, 1985).

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

### FOR A SEVENTH CAUSE OF ACTION
### BASIS FOR PUNITIVE DAMAGES

39.    Plaintiff repeats the allegations of the First, Second, Third, Fourth, Fifth, and Sixth Causes of Action where relevant.

40.    **Malice, Oppression, and Fraud**: Plaintiff hereby incorporates by reference the allegations of all causes of action as if fully stated herein. All Defendants are liable for punitive damages because they engaged in the conduct that caused Plaintiff harm with malice, oppression, or fraud.

> (a)    First, these Defendants committed malice in that they acted with intent to harm when they caused Plaintiff JAMES DUNBAR's asbestos exposures, and because their conduct was despicable and was done with a willful and knowing disregard of the rights and safety of others.

> (b)    Second, these Defendants committed oppression in that their conduct was despicable and subjected Plaintiff to cruel and unjust hardship and knowingly disregarded his rights.

> (c)    Third, the Defendants committed fraud in that they intentionally and fraudulently concealed and misrepresented material facts and did so intending to harm Plaintiff JAMES DUNBAR, or with reckless disregard for whether their fraud would harm Plaintiff.

41.    These Defendants' conduct constituting malice, oppression, and fraud was committed by, authorized by, and adopted by one or more officers, directors, and managing agents within the corporate hierarchy of each Defendant, who acted on behalf of each Defendant.

42.    As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities", and each of them, Plaintiff JAMES DUNBAR sustained the injuries, illnesses, and disabilities alleged herein.

### FOR AN EIGHTH CAUSE OF ACTION

43.    Plaintiff repeats the allegations of the First, Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action where relevant.

44.    Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of Defendants' Products to which Plaintiff JAMES DUNBAR was exposed, and such assistance by METROPOLITAN LIFE INSURANCE COMPANY aided and abetted the negligence and the marketing of said dangerous Defendants' Products by such manufacturers which proximately caused Plaintiff JAMES DUNBAR's illness, injuries, and disabilities.

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP0004911

45.    Defendant METROPOLITAN LIFE INSURANCE COMPANY, through its Policyholders Service Bureau, undertook duties owed by the asbestos-producing Defendants to Plaintiff JAMES DUNBAR by the testing of asbestos workers and the conduct of scientific studies. These duties included without limitation, the duty:

    (a)    to test fully and adequately for health risks concomitant to the normal and intended use of Defendants' Products; and

    (b)    to instruct fully and adequately in the uses of Defendants' Products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, METROPOLITAN LIFE INSURANCE COMPANY knew or should have known that it was providing testing services for the ultimate protection of third persons, including Plaintiff JAMES DUNBAR.

46.    In both conducting said tests and in publishing their alleged results, METROPOLITAN LIFE INSURANCE COMPANY failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos. METROPOLITAN LIFE INSURANCE COMPANY also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

47.    Plaintiff JAMES DUNBAR unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE INSURANCE COMPANY's tests and information dissemination, the results of which METROPOLITAN LIFE INSURANCE COMPANY published in leading medical journals.

48.    As a direct and proximate contributing result of METROPOLITAN LIFE INSURANCE COMPANY's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so: (i) the risk of harm to Plaintiff JAMES DUNBAR from asbestos exposure was increased, and (ii) Plaintiff JAMES DUNBAR suffered the injuries described below.

49.    In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the asbestos-producing Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, METROPOLITAN LIFE INSURANCE COMPANY acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including Plaintiff JAMES DUNBAR.

## DAMAGES

50.    As a result of the development of mesothelioma caused by breathing dust from

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

Defendants' Products, Plaintiff JAMES DUNBAR has suffered and sustained very serious injuries to his person requiring medical treatment.

51.    Plaintiff JAMES DUNBAR has further suffered great pain, extreme nervousness and mental anguish as a direct result of the aforesaid injuries.

52.    Plaintiff JAMES DUNBAR verily believes that his injuries, illnesses and disabilities are permanent in nature and that he will be forced to suffer same for the remainder of his life, that his enjoyment of life has been greatly impaired and, further, that his expected life span has been greatly shortened.

53.    Plaintiff JAMES DUNBAR alleges that as a result of the aforesaid illnesses, injuries and disabilities, he has been forced to incur large amounts of medical expenses by way of doctor and drug bills and eerily believes that he will be forced to incur additional expenses in an effort to treat his injuries, illnesses and disabilities as aforesaid, all the Plaintiff' damages, compensatory and punitive, in amounts to be determined by the trier of fact.

WHEREFORE, Plaintiff JAMES DUNBAR prays for Judgment on this matter in a sum sufficient to adequately compensate Plaintiff for his damages, for punitive damages, for the costs of this action, and for such other and further relief as the Court may deem just and proper.

s/Theile B. McVey
John D. Kassel (SC Bar 3286)
jkassel@kassellaw.com
Theile B. McVey (16682)
tmcvey@kasselalw.com
Jamie Rutkoski (103270)
jrutkoski@kassellaw.com
KASSEL McVEY ATTORNEYS AT LAW
1330 Laurel Street
P.O. Box 1476
Columbia, SC 29202
803-256-4242
803-256-1952 (Facsimile)
Other email:  emoultire@kassellaw.com

Pending Approval of Pro Hac Vice Application
Frank Wathen
Texas State Bar No. 20920010
1201 Elm Street, Suite 3400
Dallas, Texas 75270

Attorneys for Plaintiff

October 16, 2020

Columbia, South Carolina.



**James A. Robb, MD**
**11613 Kensington Court**
**Boca Raton, FL   33428-2415**

NAME: DUNBAR, JAMES                                                          JAR #: JD-20

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**EVALUATION PREPARED FOR SIMON, ET AL.: 10/7/20**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I am an American Board of Pathology diplomat in Anatomic Pathology, Clinical Pathology, Dermatopathology, and Cytopathology with recertification in Anatomic and Clinical Pathology. I have active, unrestricted medical licenses in good standing in Colorado and Florida.

The diagnosis of early or diffuse malignant mesothelioma is a very important diagnosis for both prognostic and legal reasons. The diagnosis should be made with the maximum confidence using the pertinent clinical information and the appropriate histological techniques, when necessary, on the available tissue.

**I am making the diagnosis of diffuse malignant mesothelioma of epithelioid type of the peritoneal cavity at greater than the 99% medical certainty level based upon the record analysis and supporting references to the pathology literature listed below. The malignant neoplasm is reported to be, within biological variation and sampling limitations, similar in all submitted sections where the neoplasm is present. I have ruled out other potential causes of mesothelioma based on the information I have at this time. The inhalation of asbestos fibers by Mr. Dunbar, within a reasonable degree of medical probability, caused his malignant mesothelioma.**

TISSUE EXAMINED: Record analysis was performed on case SP19-9263 (omentectomy) from the Department of Pathology, Medical University of South Carolina, Charleston, SC (attachment #1). The immunohistochemical (keratin5/6, calretinin, D2-40, WT-1) stains were reported.

## I. CLINICAL PRESENTATION

Mr. Dunbar, age 67 at time of omentectomy on 5/21/19 and final diagnosis on 5/23/19, had developed diffuse peritoneal masses (attachment #1). Peritoneal omentectomy was positive for an epithelioid malignancy, which was diagnosed as a malignant mesothelioma by the diagnosing pathologists (attachment #1). This is a classic clinical presentation of a malignant mesothelioma arising in the peritoneal cavity.

Mr. Dunbar had exposure to asbestos fibers (exposure history and a diagnosis of mesothelioma, without a history of therapeutic radiation to the peritoneal cavity).

**References:**
    1) McCaughey, Kannerstein, and Churg. Tumors and Pseudotumors of the Serous
    Membranes. Atlas of Tumor Pathology, Second Series, Fascicle 20. Armed Forces
    Institute of Pathology, 1985.
    2) Battifora and McCaughey. Tumors of the Serosal Membranes. Atlas of Tumor
    Pathology, Third Series, Fascicle 15. Armed Forces Institute of Pathology, 1995.
    3) Husain, Colby, Ordonez, et. al. Guidelines for Pathologic Diagnosis of Malignant
    Mesothelioma. A Consensus Statement from the International Mesothelioma Interest
    Group, Arch Pathol Lab Med. 2012;137:647-667.

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

EVALUATION (CONTINUED): DUNBAR, JAMES                    **PAGE 2**

## II. GROSS AND LIGHT MICROSCOPIC MORPHOLOGY

The peritoneal malignancy, which is reported to invade the connective tissue of the omentum, is reported to have an epithelioid mesothelial pattern. A spindle cell (sarcomatous) component (biphasic) is not reported. This pattern is strongly consistent with malignant epithelioid mesothelioma of the peritoneal cavity.

**Reference:**  1) See AFIP references #I.1,2 (rim vacuoles, 1: pp. 62-63) above.
2) Dail & Hammar, Pulmonary Pathology, 2nd Ed., pp. 1503 &1534, 1994.

## III. IMMUNOHISTOCHEMISTRY (IHC)

**A. Keratin 5/6** Malignant mesotheliomas are almost all positive and pseudomesotheliomatous adenocarcinomas are almost all negative for keratin 5/6 staining. This malignancy is reported to be positive for keratin 5/6 and typical for malignant mesothelioma.

**B. Calretinin** This antibody stains mesotheliomas with a cytoplasmic/nuclear pattern and is negative in non-mesothelial pseudomesotheliomatous carcinomas, although occasional weak focal cytoplasmic staining may occur. This malignancy is reported to be positive for calretinin and typical for malignant mesothelioma.

**C. D2-40** This antibody stains most mesotheliomas in a strong predominately membrane pattern. Pseudomesotheliomatous adenocarcinomas are usually negative, but some may have focal staining. This malignancy is reported to be positive for D2-40 and typical for malignant mesothelioma.

**D. Wilms' Tumor Suppressor Gene Antigen (WT-1)** This antibody usually stains mesotheliomas with a nuclear pattern and is usually negative in non-mesothelial pseudomesotheliomatous carcinomas, although occasional weak focal cytoplasmic staining may occur. This malignancy is reported to be positive for WT-1 and typical for malignant mesothelioma.

References:
1) McCaughey, WTE, Colby, TV, Battifora, H, Churg, A, Corson, JM, Greenberg, SD, Grimes, MM, Hammar, S, Roggli, VL, and Unni, KK, Diagnosis of Diffuse Malignant Mesothelioma: Experience of a US/Canadian Mesothelioma Panel, Mod Pathol 1991;4:342-353.
2) JA Robb, personal observations.
3) See AFIP reference #I.2 above.
4) Ordonez, NG, Immunohistochemical Diagnosis of Epithelioid Mesothelioma: An Update, Arch Pathol Lab Med. 2005;129:1407-14.
5) Dabbs, DJ, Diagnostic Immunohistochemistry, Churchill-Livingstone, New York, 2002.
6) Lyons-Boudreaux, V, Mody, DR, et. al., Cytologic Malignancy Versus Benignancy: How Useful Are the "Newer" Markers in Body Fluid Cytology?, Arch Pathol Lab Med, 2008;132:23-28.
7) Husain, AN, Colby, TV, Ordonez, NG, et al., Guidelines for Pathologic Diagnosis of Malignant Mesothelioma: 2017 Update of the Consensus Statement from the International Mesothelioma Interest Group, Arch Pathol Lab Med, 2018;142:89-108.

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911

**EVALUATION (CONTINUED): DUNBAR, JAMES**          **PAGE 3**

## IV.  FINAL DIAGNOSTIC SUMMARY TABLE SUPPORTING DIAGNOSIS OF MESOTHELIOMA IN THE PERITONEAL CAVITY

| | EXPECTED | | |
| FINDING/RESULT | PSEUDOMESO ADCA | MESOTHELIOMA | DUNBAR |
| --- | --- | --- | --- |
| 1. INCIDENCE | APPROX. 1/YR ** | 1000/YR ** | |
| 2. MORPHOLOGY | GLANDULAR | MESOTHELIAL | MESOTHELIAL |
| 3. D2-40 | NEGATIVE | POSITIVE | POSITIVE |
| 4. KERATIN 5/6 | NEGATIVE | POSITIVE | POSITIVE |
| 5. CALRETININ | NEGATIVE | POSITIVE | POSITIVE |
| 6. WT-1 | NEGATIVE | POSITIVE | POSITIVE |

** 1/1000 = < 0.10% chance of being a pseudomesotheliomatous carcinoma/sarcoma
**************************************************************************************************

CONCLUSION: THE ABOVE TOTAL PROFILE SUPPORTS THE DIAGNOSIS OF
            MALIGNANT MESOTHELIOMA. THE PROBABILITY OF A
            PERITONEAL ADENOCARCINOMA HAVING THIS PROFILE IS
            LESS THAN 1% **.

Date Completed: 10/7/20

James A. Robb, M.D.



ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911



**MUSC Health**
Medical University of South Carolina

MEDICAL RECORDS
189 Ashley Ave Suite H102
MSC 250
Charleston SC 29425-3490
MUSC ROI OP Abstract of H

Dunbar, James
MRN: 001960365, DOB: 2/24/1952  Sex: M
Acct #: 521796051
Visit date 6/12/2019

Progress Notes - MUSC ROI OP Abstract Notes (continued)

Progress Notes by Ernest Ramsay Camp, MD MSCR at 6/12/2019 11:30 AM (continued)

General:alert, appears stated age and cooperative
Abdomen:soft, bowel sounds active, non-tender
Incision: healing well, no drainage, no erythema, no hernia, no seroma, no
    swelling, no dehiscence, incision well approximated

SURGICAL PATHOLOGY REPORT:
Results for orders placed or performed during the hospital encounter of 05/21/19
SURGICAL PATHOLOGY REPORT

| Result | Value | Ref Range |
|--------|-------|-----------|
| SURGICAL PATHOLOGY REPORT | | |

Accession #: SP19-9263

Date Collected: 5/21/2019 09:33
Diagnosis

A. OMENTUM, OMENTECTOMY:
· EPITHELIOID MESOTHELIOMA
· SEE COMMENT

COMMENT: Per Epic, the patient was previously biopsied at the VA Hospital.
The prior pathology report from the Joint Pathology Center is available for
review: "malignant mesothelioma, epithelioid type; the tumor cells are
positive for calretinin, CK5/6, D2-40, and WT-1, with loss of BAP-1".

Slides reviewed objectively without bias in consultation with Dr. Smith, who
concurs with the above diagnosis and evaluation.

Tissue Source
A:Omentum, Resection For Tumor:  Omentum

Clinical Information
Peritoneal mesothelioma.

Gross Description
A. The specimen is received fresh and later placed in formalin, labeled with
the patient's name and hospital number with additional labeling as OMENTUM.
It is given an accession number. It consists of multiple pieces of
yellow-red, thickened, nodular omentum that aggregate to 22 x 17 x 3 cm.
Portions of the omentum are adhered together, forming firm lesions. Other
pieces of omentum have a small red micropapillary lesions on the surface. The
specimen is serially sectioned to reveal thickened areas of white appearing



ELECTRONICALLY FILED - 2020 Oct 16 11:37 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4004911



**MUSC Health**
Medical University of South Carolina

MEDICAL RECORDS
169 Ashley Ave  Suite H102
MSC 250
Charleston SC 29425-3490
MUSC ROI OP Abstract of H

Dunbar, James
MRN 001930355, DOB 2/24/1952  Sex: M
Acct #: 521796031
Visit date: 6/12/2019

---

**Progress Notes - MUSC ROI OP Abstract Notes (continued)**

**Progress Notes by Ernest Ramsay Camp, MD MSCR at 6/12/2019 11:30 AM (continued)**

fibrosis.  Representative sections from all aspects of the omentum are taken
and submitted in cassettes A1-A4.

Snider, Jessica Sara
Intraoperative Diagnosis

Microscopic Description
All microscopic sections with this case were examined, and the result(s) of
each examination is/are incorporated in the above diagnosis(es).

SK

Certification Statement
I certify that I personally conducted the diagnostic evaluation of the above
specimen(s) and have rendered the above diagnosis(es).

Jessica Ashley Forcucci, M.D.
(Electronically signed by)
Verified: 05/23/2019 10:44
JF/SK


**ASSESSMENT:**
James Dunbar is doing well without problems

Surgical pathology reviewed. Patient diagnosed with advanced peritoneal mesothelioma

**PLAN:**
1-Consults: Medical Oncology at the VA hospital for further management.

Sincerely,

E. Ramsay Camp, M.D.
Associate Professor, Surgical Oncology
Department of Surgery
Medical University of South Carolina
25 Courtenay Drive Room 7018
MSC 295
Charleston, SC 29425
Tel: 843-876-4420
Fax: 843-876-3046

---